Jones, J.
We conclude that it cannot be said that the Workmen’s Compensation Board abused its discretion as a matter of law when it denied the application of this employer and its insurance carrier for a rehearing and reconsideration of the issues in this case.
Following the decedent’s death on December 6, 1965, Pauline Rusyniak asserted a claim on behalf of the decedent’s six minor children. On August 22, 1967 a referee found that she was the decedent’s divorced wife and not herself a statutory beneficiary or dependent. At an adjourned hearing on October 1, 1969 claimant testified that her 1960 Alabama divorce from the decedent had been set aside as null and void by an Alabama court on August 8, 1969 and copies of the divorce and nullification decrees were received in evidence. Subsequent hearings were held, the claim was formally amended to reflect claimant’s revised assertions, and on October 16, 1970 the referee decided that claimant was the decedent’s legal widow and made awards of death benefits to her as such widow and to the decedent’s six minor children. Review was sought by the employer and insurance carrier, and on November 12, 1971 the Workmen’s Compensation Board affirmed the referee’s decision and awards. After appealing to the Appellate Division, Third Department, from this decision of the board, the employer and insurance carrier on July 10, 1972 applied to the board for a rehearing on the issue of whether claimant was the decedent’s legal widow. The board on February 23, 1973 denied the application for reconsideration and an *387 appeal was taken. The Appellate Division affirmed both decisions of the Workmen’s Compensation Board (43 AD2d 1015).
Even if it be assumed (and in our opinion the evidence in the record would warrant the inferences) that claimant fraudulently obtained an ex parte Alabama decree setting aside her earlier divorce from the decedent and that she practiced fraud, or at least knowing misrepresentation, on the Workmen’s Compensation Board in her presentation of her claim for benefits, and even if it also be accepted that her claim should be denied if the merits were now to be reached, it does not follow therefore that because the board had broad power and discretion to reopen the case, it was error as a matter of law for it to refuse to exercise such power and discretion in favor of this employer and its carrier.
The hearing at which a copy of the questionable Alabama decree and the related misleading evidence was introduced was held on October 1, 1969. Subsequent hearings Were held on December 11, 1969, and April 23, 1970. On October 2, 1970 the referee made his report, granting benefits to the claimant and her children. On November 12, 1971 the board affirmed the referee’s decision and awards. It was not until July 10, 1972, however, that the employer and the carrier filed an application for rehearing.
There was thus a lapse of over two years and nine months after the fact of the Alabama decree was made known to the employer and carrier before application was made for rehearing. When the application was made it was one year and nine months after the referee’s decision and eight months after affirmance by the board. The only explanation offered by the employer or carrier for this delay is the bland statement that the complete file in Onondaga County Surrogate’s Court (inspection of which apparently aroused suspicion leading to the application for reconsideration) was first examined on June 26, 1972. No word of explanation is offered as to why such investigation was so long delayed, or indeed what triggered the inquiry when finally it was undertaken. No assertion is made that the evidence was not at all times available for discovery; no charge is leveled that claimant had earlier diverted or obstructed the inquiry. The inference is compelling that for reasons best known to them, the employer and its carrier undertook no independent investigation to verify the assertions of the claimant until many months after the case was closed.
*388 Although we agree that the strength of the applicants’ position on the merits bears on the decision to reopen, we cannot say on this record, in view of the extended unexplained quiescence of the employer and its carrier, neither provoked nor induced by the claimant, that it was an abuse of discretion on the part of the board to refuse to reopen this case.
Accordingly, the order of the Appellate Division should be affirmed.
Fuchsberg, J.
This is an appeal from an order of the Appellate Division unanimously upholding an award by the Workmen’s Compensation Board granting death benefits to the widow and six minor children of Anthony Rusyniak and thereafter denying an application for a rehearing on the issues of widowhood and dependency. We believe the order should be affirmed as to the other issues because the board’s findings were consistent with the substantial evidence rule. We set forth in this opinion the reasons on which we also affirm the board’s exercise of discretion in rejecting the application for rehearing.
The facts, so far as pertinent for that purpose, are as follows:
Pauline and Anthony Rusyniak were married on January 26, 1952. Four children had been born to them before April 7, 1960. On that date, a divorce decree dissolving the marriage was granted to Anthony by an Alabama court. A notice of appearance executed by her in New York was filed on Pauline’s behalf. The divorce followed a separation agreement entered into in New York between the parties on March 30, 1960. New York was there given as the residence of both parties.
On December 6, 1965, Anthony, a professional pilot, was killed in an airplane crash. Despite the divorce, in the intervening years between the date of the decree and the time of the death, Pauline and Anthony had continued to cohabit from time to time and Pauline had given birth to two more children. A report by a general guardian appointed by the Surrogate of Onondaga County declaring them legitimate had been filed with the apparent approval of that court well before the compensation hearings were concluded and the awards here made.
Initially, on the basis of Pauline’s testimony at the first hearing, held on August 10, 1967, that she and Anthony had *389 been divorced, the referee held that she was not a statutory dependent. However, while the case was still pending, at a hearing held on October 1, 1969 she accurately informed the referee that less than two months earlier, on August 8, 1969, the divorce had been declared null and void by the Alabama court as a result of an ex parte proceeding she had brought there attacking its original jurisdiction. Copies of the divorce- and nullification decrees were received in evidence. By December 11, 1969 her claim had been formally amended to reflect the changed status.
Sometime following another hearing held some months later, the referee on October 16, 1970 handed down his award, in which he decided, inter alia, that Pauline was the surviving widow. That was over a year after Pauline had openly announced the change and manner of obtaining the change from her divorced status. During all that time, neither the employer nor its carrier appears to have made any effort whatsoever either to examine the Alabama court records or to investigate the circumstances surrounding the granting of the nullification. In fact, though 10 months earlier a discussion about the Onondaga Surrogate’s Court proceedings had ensued before the referee, the employer’s representatives left that area of inquiry fully fallow as well. They did nothing more even when, on April 23, 1970, Pauline’s lawyer, somewhat confusedly it is true, may have left the impression that the Surrogate’s Court had taken some action bearing on recognition of the nullification. As it happened, that action was its acceptance for filing of the report of the general guardian who, it turned out, had therein declared that the question had "answered itself’ and that he found the children legitimate; the fact is appellants did not even bother to find that out, though it was a public record, until over two years later. By November 12, 1971, when the award was affirmed by the compensation board, appellants had still taken no investigatory steps. Even the board’s affirmance did not inspire any.
Indeed, it was not until July 10, 1972, about three years after Pauline obtained the nullification of which she had promptly notified the referee and the appellants, and almost two years after the referee had decided the case, that the application for a rehearing was made to the board. It was done on the asserted ground of newly-discovered evidence, that evidence consisting of nothing more or less than the information gathered from the Onondaga Surrogate’s Court *390 and from the Alabama court. Both of those were not merely readily discoverable, just waiting to be seen during those nearly three years, but Pauline and her attorney had directed appellants’ attention to them from early on. In fact, far from this being a situation where anyone was intentionally misled, the over-all record reveals a straightforwardness on Pauline’s part, despite the fact that she did not remember in 1969 "whether she had signed” the Alabama notice of appearance form nine years earlier, an understandable failure of memory in view of the fact that she was then going through a tension-torn episode during which she apparently had signed separation agreements and perhaps other documents in what could have been less than a detached and deliberative mood.
In any event, under the facts here, hardly the vestige of an excuse for the overlong delay was presented to the board. The overly late inquiry anent the belated search of the courts’ records disclosed virtually nothing that was not revealed by the decrees themselves when they were introduced before the referee in 1969. On close analysis, appellants’ dilatoriness does not appear to have involved the finding of new evidence at all, but rather in evolving and presenting a legal theory of defense. In fact, the hearing minutes are compatible with a belated decision to probe and press the point used on the rehearing application made only after the board’s decision signaled the death knell of the issues on which appellants had earlier concentrated. But awards and judgments may not be vacated for such reasons, even when there is no extensive and inexcusable delay.
The Appellate Division’s affirmance also recognizes the fact that the board is vested with broad discretion in acting on applications for rehearings, and most especially in cases involving "new” evidence of which employers and their carriers should have been aware. (Matter of Carinci v Pittston Stevedoring Corp., 270 App Div 662, affd 296 NY 937; Matter of McNamara v New Process Gear Div., Chrysler Corp., 43 AD2d 603; Matter of Centofante v Belcoo Taxi Corp., 38 AD2d 983; Matter of Wagner v Emile & Robert Beauty Salon, 27 AD2d 608; 66 NY Jur, Workmen’s Compensation, § 813, p 565; see 12 NYCRR 300.14.)
*391 There are cases, of course, like those cited in the dissent, in which the Appellate Division has found that the denial of a rehearing was so arbitrary and capricious as to constitute an abuse of discretion (Matter of Williams v L & J Painting Corp., 15 AD2d 837; Matter of Barrow v Loon Lake Hotel, 3 AD2d 783; Matter of Lawrence v Meyer-Garry, 278 App Div 990; Matter of McLaskey v City of New York, 277 App Div 1068), but those cases are readily distinguishable. In Barrow, the new evidence, to be furnished by a previously unlocatable witness, unlike our case, was unavailable at the time of the original hearing. In Williams and in Lawrence, appellants obtained new evidence which was completely contradictory of the claimant’s position; in the case before us the claimant was steadfast in her assertion of the nullity of the divorce during all the nearly three years of appellants’ delay. McLaskey did not involve newly discovered evidence; the board there having upheld a referee’s decision on a ground different from what had been litigated, its denial of a rehearing deprived the employer of the opportunity to submit proof to confront the issue altogether.
Finally, the decisions of this court are emphatic that we will not review a determination of the Appellate Division denying a motion for a new trial on the grounds of newly-discovered evidence, no matter how strong a case is made on such grounds. (24 Rock Corp. v Tomasello Bros., 21 NY2d 876; Los Angeles Inv. Securities Corp. v Joslyn, 282 NY 438; Cohen and Karger, Powers of the New York Court of Appeals, § 147, p 586, n 13.) Our review of discretionary administrative determinations is hardly much broader. (Matter of Pell v Board of Educ., 34 NY2d 222, 230-231; see Matter of Fischer [Levine], 36 NY2d 146, 150; Cohen and Karger, Powers of the New York Court of Appeals, § 108, pp 460-461.)
Accordingly, the order appealed from should be affirmed.