■ In the Matter of the Claim of ARDITH MONTELEONE, Appellant, v NEW YORK STATE ATTICA CORRECTIONAL FACILITY, Respondent. WORKERS' COMPENSATION BOARD, Respondent. (And 19 Other Related Claims.)—Weiss, J. Appeal from a decision of the Workers' Compensation Board, filed December 30, 1986, which, inter alia, denied claimants' applications to reopen their claims.

These 20 workers' compensation claims stem from the "Attica uprising" in September 1971 and involve applications to reopen pursuant to Workers' Compensation Law § 123 precipitated by the decisions of the Court of Appeals in *Cunningham v State of New York* (60 NY2d 248) and *Werner v State of New York* (53 NY2d 346). Three of the claimants, Juanita Werner Taylor, Helen Cunningham and Ardith Monteleone Bookmiller, are the widows of correction officers and a civilian employee, respectively, who were shot to death by State employees in the retaking of the facility. The other 17 claimants sustained injuries while held hostage by the inmates during the uprising. In *Cunningham* and *Werner,* the Court of Appeals determined that the widow claimants were precluded from suing the State for wrongful death based on intentional assault, since each had applied for and accepted workers' compensation benefits *(see, Cunningham v State of New York, supra,* at 251-252; *Werner v State of New York, supra,* at 351-355). The Court of Appeals also barred the hostage claimants from pursuing an action for intentional assault since the Workers' Compensation Board had issued an award on each claim *(see, Cunningham v State of New York, supra,* at 252-253). In so ruling, however, the Court of Appeals emphasized that claimants could apply to the Board for reconsideration of its prior determinations upon a showing that State employees misled them to believe compensation benefits were their exclusive remedy *(see, supra,* at 253; *Werner v State of New York, supra,* at 352, n 2, 355). Accordingly, the widow claimants applied to the Board for reconsideration in October 1981; a similar request was filed on behalf of the hostage claimants in March 1984. At the conclusion of extensive hearings, the Board found, *inter alia,* that there was no evidence that any State employees misled claimants and denied the applications to reopen. Claimants have appealed.

The pivotal question before us is whether the Board abused its discretion in refusing to reopen the claims presented (Workers' Compensation Law § 123; *see, Matter of Rusyniak v Syracuse Flying School,* 37 NY2d 384, 390, 391; *Matter of Sinacore v Dreier Structural Steel,* 97 AD2d 659). Preliminarily, we observe, based on the language utilized in *Werner,* that the burden was on claimants to demonstrate an affirmative misrepresentation on the part of the State or its compensation carrier, the State Insurance Fund (hereinafter the Fund), designed to induce an election of compensation benefits *(see, Werner v State of New York, supra,* at 352, n 2, 355). Mere silence on the part of State officials, or even neutral acts,

would not warrant the reopening of the subject claims. We further note that while the hearings were conducted before a Workers' Compensation Law Judge who did not render a determination, the Board was entitled to assess witness credibility (see, Matter of McCabe v Peconic Ambulance & Supplies, 101 AD2d 679; Matter of Morgante v Southeastern Pub. Serv. Co., 98 AD2d 892).

Claimants essentially maintain that the State and its compensation carrier engaged in a deliberate course of conduct in the aftermath of the uprising designed to mislead them into accepting compensation benefits so as to foreclose any civil lawsuits against the State. With respect to the hostage claimants, the record establishes that compensation claims were actually initiated on their behalf, either by the filing of a medical report, a notice by the Fund or an employer report of accident. After the uprising was quelled, most of these claimants attended a meeting with Russell G. Oswald, then Commissioner of Correctional Services, and were advised to take up to six months off with pay, a leave variously described as free time or excused time. Neither claimants' legal rights nor workers' compensation benefits were discussed at this meeting. During the authorized leave period, claimants continued to receive a salary and certain medical expenses were paid (see, Cunningham v State of New York, supra, at 252). Many of the claimants testified that they did not realize they were receiving compensation benefits during this period.

From this scenario, claimants theorize that the State hastily initiated the compensation claims and provided benefits without explanation in order to effect an election of compensation benefits and shield the State from civil liability. Leonard Mann, a district claims manager of the Fund, refuted this thesis by testifying that the Fund's initiation of files on behalf of the claimants, and the payment of wages and medical expenses, were standard procedure for State employees injured on the job. Additionally, Richard A. Fabian, a Board employee, testified that the compensation claims were indexed by the Board in accord with standard procedure. Significantly, none of the hostage claimants asserted that the State or its carrier actually misrepresented information concerning the acceptance of compensation and their right to sue the State. Notably, by October 1971, each claimant was notified that a compensation claim had been indexed. By December 1971, all the hostage claimants had consulted with their present attorney, and notices of intention to file a claim against the State were duly filed. In view of the foregoing, and the fact that no

claim of misleading was registered until almost 13 years after the uprising, we cannot say that the Board abused its discretion in refusing to reopen these cases.

We reach a similar conclusion with respect to the widow claimants. Initially, we observe that both Mann and Fabian confirmed that the procedures employed in processing the widows' claims were standard. Additionally, Mann explained that, while the Fund generally paid death benefits only after a compensation hearing, advance payments were made here in order to assist the widow claimants, not to avoid a lawsuit. As to their individual claims, Taylor testified that in September and November 1971, she was advised by representatives of the Fund and Oswald that a lawsuit could not be commenced against the State. Another widow, Beverly Forrester Lewis, testified that Fund employees advised her she could sue the State even if she accepted compensation benefits. In contrast, Oswald testified that he did not remember discussing lawsuits with the widows and never attempted to dissuade anyone from suing the State. Mann, who met with the widows on behalf of the Fund, testified that no one inquired about suing the State or was told that workers' compensation was the exclusive remedy. This divergence in testimony presented a sharp credibility dispute for Board resolution. The difficulty here, however, is that after summarizing the evidence presented, the Board abruptly concluded "[T]here is *no evidence* that Mrs. Werner [Taylor] had been misled" (emphasis supplied). As claimants maintain, the Board effectively failed to set forth the factual findings upon which the credibility dispute was resolved *(see, Matter of Burns v Miller Constr.,* 62 AD2d 1114; *Matter of Mennis v Amendes Co.,* 56 AD2d 679; *Matter of Burnette v Schreve,* 34 AD2d 186).

Under the circumstances presented, however, a remittal to the Board for further clarification is not necessary. In its decision, the Board emphasized that Taylor consulted an attorney shortly after her husband's funeral and filed a notice of intention to file a claim against the State in December 1971. She was also aware that one widow had renounced workers' compensation in favor of a lawsuit against the State. Following a hearing in January 1972, an award was rendered requiring the payment of funeral expenses and a weekly stipend. In 1976, Taylor received a remarriage award. The Board further noted that Taylor did not complain of being misled until October 1981, and had previously made no effort to renounce the benefits received. Since Taylor indisputably consulted an attorney and undertook efforts to sue the State

prior to her compensation hearing, the Board could rationally conclude that she was not misled by any information provided by the employees of the State or its workers' compensation carrier (see, Arnold Constable Corp. v Chase Manhattan Mtge. & Realty Trust, 59 AD2d 666; 60 NY Jur 2d, Fraud & Deceit, § 137). Her continued receipt of compensation benefits was essentially a ratification of her initial acceptance of benefits shortly after the uprising. Accordingly, we conclude that the Board did not abuse its discretion in refusing to reopen Taylor's claim.

The same analysis attends Bookmiller's application to reopen. Her assertion that Fund employees visited her after her husband's death and advised her that she could not sue the State was expressly refuted by Mann. As with Taylor's claim, the Board's finding of "no evidence" to support Bookmiller's argument failed to adequately resolve this credibility dispute. Nonetheless, Bookmiller continued to accept compensation benefits after consulting her attorney and filing a notice of claim against the State, and never complained about being misled until 1981. Thus, the Board could rationally refuse to reopen her claim.

Finally, Cunningham did not claim that any State or Fund employee affirmatively attempted to mislead her in any way. She also continued to accept workers' compensation benefits after consulting her attorney and initiating a civil lawsuit. As such, the Board could readily reject her application.

Decision affirmed, without costs. Mahoney, P. J., Casey, Weiss, Levine and Mercure, JJ., concur.