Fuchsberg, J.
The issue is whether the Unemployment Insurance Appeal Board’s decision that claimant’s retirement from the United States Postal Service in response to his employer’s request for a reduction in work force was a “ voluntary separation ” from employment “ without good cause ” disqualifying him from receiving benefits is valid. The Appellate Division reversed the board’s decision and.the Industrial Commissioner appeals. We have concluded that the record supports the board’s determination and, accordingly, we must reinstate its decision.
Claimant, then age 64 and an employee of the United States Postal Service for 27 years, retired from the service on June 30,1972 in order to take advantage of an early retirement plan offered by his employer as an incentive towards achieving the latter’s objective of reducing its work force. The retirement opportunity was explained in a memorandum issued by the Postmaster General on June 5, 1972. It notified employees that those meeting certain eligibility requirements who retired and were on a nonpay status no later than June 30,1972 would receive a 4.8% increase in retirement annuities. The memorandum, in part, stated: ‘ ‘ The situation Creating the discontinued-service retirement -opportunity arises from the fact that we have an excess number of employees. But for the No-Layoff provision in our National Agreement, we would be actively engaging in a system-wide reduction-in-force. * * * While I encourage you to take advantage of this opportunity to retire, particularly in time to get the 4.8% cost-of-living increase, I *149 want it clearly understood that no employee will be coerced to submit a resignation in response to this request.” The memorandum also stated that resignations in response to the Postmaster General’s request would be considered involuntary for retirement purposes, with the consequence that retirement benefits would be more favorable than if the retirement were considered voluntary by the Federal agency. Three days after his retirement, claimant filed for unemployment insurance benefits in New York.
Section 593 (subd. 1, par. [a]) of the Labor Law, in relevant part, provides: “ No days of total unemployment shall be deemed to occur after a claimant’s voluntary separation without good cause from his last employment prior to the filing of his claim until he has subsequently worked in employment for not less than three days in each of four weeks or earned remuneration of at least two hundred dollars.” The effect of this section is that, for a limited period measured by his subsequent employment (cf. Matter of James [Levine], 34 N Y 2d 491, 494), a claimant is ineligible to receive benefits if he voluntarily left his employment without good cause. Obviously, the claimant here could not- have met the conditions of this section. And, after claimant had wended his way through the administrative pathways of the State unemployment insurance system the Appeal Board, the system’s highest decisional body, found that he had left his employment voluntarily and without good cause and, therefore, was subject to the disqualification period.
In the course of the administrative proceedings, claimant stated in support of his claim that he had elected optional retirement in order to take advantage of the postal service’s offer of early retirement benefits and that both his employer and his union paper had led him to believe he would then be eligible for State unemployment insurance benefits.
The Appeal Board found that claimant could have continued to work until the mandatory retirement age of 70, that he could have recouped the 4.8% increase in retirement annuity by working an additional .nine months and that', in leaving his employment solely to take early advantage of the increase, he acted for a personal, noncompelling reason and without good cause.
Judicial review of the board’s determination is explicitly limited by statute to questions of law. Section 623 of the Labor *150 Law, in relevant part provides: “A decision of the appeal board shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law.” As a consequence, as to pure questions of fact, and factual inferences to be drawn therefrom, a decision of the Appeal Board, which then acts quasi-judicially, would be conclusive upon the courts if supported by substantial evidence. Here the evidentiary facts were undisputed. (See Matter of Cassaretakis [Miller], 289 N. Y. 119,125 [whether an individual was a member of the crew of a vessel], affd. sub nom. Standard Dredging Corp. v. Murphy, 319 U. S. 306.)
As to mixed questions of fact and law, i.e., where the conclusion turns on the combined consideration of factual and legal factors, the Appeal Board’s .authority is quasi-legislative with the concomitant right and responsibility to exercise its expertise and judgment. Decisions so arrived at have been denominated “ discretionary determinations ”. (1 N. Y. Jur., Administrative Law, § 181, p. 601.) They are final if they have a “ rational basis ”. (See, e.g., Matter of Marsh [Catherwood], 13 N Y 2d 235, 239.) This is not to ¡be confused with the “ arbitrary and capricious ” test applied to purely administrative actions and sometimes improperly applied to quasi-judicial or quasi-legislative determinations of an administrative agency. (See, e.g., Matter of Colton v. Berman, 21 N Y 2d 322, 334.)
Questions of law, of course, may always be reviewed by an appellate court. (Matter of Van Teslaar [Levine], 35 N Y 2d 311, 317-318.)
Applying these rules, whether a particular separation from employment is “ voluntary ” and “ without good cause ” (Labor Law, § 593, subd. 1, par. [a]) in a ¡particular case is usually a question of fact for the Appeal Board. Where, however, the issue of “ voluntariness ” is not a question of fact alone, but where, as here, there is not even any dispute as to the evidentiary details, and it involves as well quasi-legislative considerations of policy relating to the intended scope of the statute, the question is one to the determination of which the Appeal Board may bring to bear its own special competence in carrying out the supervisory authority conferred on it by the Legislature.
This case also involves the application of other rules arising out of the fact that the claimant was a Federal employee. In *151 such oases, the Appeal Board, and the subsidiary divisions of the State unemployment insurance administrative structure, are generally conclusively bound (U. S. Code, tit. 5, § 8506) by certain findings of the claimant’s Federal employing agency. These include* "the reasons for termination of Federal service.” (U. S. Code, tit. 5, § 8506, subd. [a], par. [4].)
Accordingly, it is the practice of the Industrial Commissioner to request the reasons for termination from the claimant’s Federal employer. If the claim'ant and his Federal employer agree on those reasons, then, pursuant to Federal regulation, they are conclusive upon the State agency (20 CFB 609.18). Finality also obtains where the employee and his Federal employer disagree and a determination is then made by the Federal agency or the United States Civil Service Commission after a hearing on any issues in dispute. The Federal finding is not conclusive where the claimant disputes it and has not been afforded a hearing.
In the case before us, claimant asserts that his retirement was either involuntary or, if voluntary, was with good cause. His employer described the reasons for claimant’s termination as “ retired-gave no reason ”, explaining that that terminology “ represents our conclusion that the claimant meets the tests of eligibility f.or discontinued service retirement * * * Claimant could have continued in his employment, had he not retired. He was not coerced to submit his resignation, but did so voluntarily.” Claimant disputed the Federal agency’s conclusion that his retirement was voluntary. There was "no hearing. Consequently, both the Appeal Board and the Appellate Division concluded that, as to the disputed conclusion of voluntariness, this “ finding ” was not binding upon the board (U. S. Code, tit. 5, § 8506; 20 CFB 609.18).
We agree that the Federal agency’s conclusion that claimant had retired voluntarily ” was not binding on the board, but for different and additional reasons. In our view, claimant’s employer’s characterization of this type of retirement as either “ voluntary ” or “ involuntary ” (see Matter of Sier [Levine], *152 42 A D 2d 207; Matter of Hiken [Levine], 40 A D 2d 926) is descriptive of the nature of his type of separation from employment only for Federal retirement purposes. It is not a “ reason ” for termination which binds the Appeal Board in its administration of our State Unemployment Insurance Law.
Federal statute (U. S. Code, tit. 5, § 8502, subd. [b]) further provides that where, as here, unemployment compensation to Federal employees is paid by the State pursuant to Federal-State agreement ‘ ‘ compensation will be paid by the State to a Federal employee in the same amount, in the same terms, and subject to the same conditions as the compensation which would be payable to him under the unemployment compensation laws of the State if his Federal service and Federal wages assigned under section 8504 of this title to the State had been included as unemployment and wages under the State Law (Emphasis added.) Thus, except for the finality of specified Federal findings enumerated in the United States Code (tit. 5, § 8506) including “ reasons for termination of Federal service ”, State law and administrative policy prevail ,in determining questions of a Federal employee’s entitlement to unemployment compensation benefits.
A Federal employee who co-operates with his employer’s goal of reducing the work force by retiring early in exchange for accelerated retirement benefits ¡should be entitled to the same unemployment benefits and be subject to the same conditions imposed by the Unemployment Compensation Law as would a State or private employee who retires under similar circumstances. This, in our view, is the effect of the Federal statute (U. S. Code, tit. 5, § 8502, subd. [b]). Its apparent aim of consistency of application of State Unemployment Insurance Law as between Federal and other employees should not be altered by a label placed on this type of retirement by the Federal employer.
Our conclusion that the board is, therefore, not bound for unemployment insurance purposes by the agency’s characterization of these resignations as “ voluntary ” or “ involuntary ” is buttressed by the Manpower Administrator of the United States Department of Labor itself. In “ Unemployment Insurance Program Letter ”, Number 1094 dated December 21, 1970, addressed to all State employment security agen *153 cies, he states that "we will not question the propriety of a State’s determination action respecting a ‘ Resignation — RIF [reduction in force] Situation ’ decision if it is in accord, with action normally taken in State UI [unemployment insurance] cases.” In a similar letter, Number 1214 of December 4, 1972, he further explains that, in the case of a resignation in a reduction in force situation, the Federal agency’s description of the separation from employment as “ involuntary ” is"not necessarily binding upon the State under the United States Code (tit. 5, § 8506, subd. [a]) since the particular employee might have been able to continue in employment.
In the case before us, the “ reason ” for claimant’s termination from Federal service is that he retired. It is clear he did so in response to his employer’s request for a reduction in work force accompanied by an offer of early retirement benefits. Whether he retired “ voluntarily ” or “ involuntarily ” or with or without ‘ ‘ good cause ’ ’ were questions for the Appeal Board to decide according to the circumstances of the particular case. We emphasize that this is not a case of mandatory retirement for age, disability, discontinued service or other reason compelling a conclusion of involuntariness. Nor is this the case of an employee who ¡would forever have lost the offered increase in retirement benefits or whose benefits would have been reduced by continuing to work.
Here, as the board found, the claimant could have earned the offered 4.8% annuity increase by working an additional nine months. He would not have given up this benefit by continuing to work. His decision to retire early, then, was not the consequence of a Hobson’s choice between an annuity increase or no increase at all. As a consequence, the Appeal Board’s determination that he retired for nonoompelling reasons, voluntarily and without good cause within the meaning of the Labor Law, was rational and should not be disturbed.
We hold, therefore, that the Appellate Division exceeded its power in reversing the Appeal Board and substituting its own judgment regarding appropriate policy to be adopted in the administration of the Unemployment Insurance Law and in the distribution of its funds in this case (see Labor Law, § 550, subd. 3). Those in whom the responsibility for administration of the system is lodged cannot be said to have acted irrationally *154 in denying the payment of benefits to a claimant who could have continued to work but chose not to do so in the exercise of his own rational even well-motivated, personal purposes.
Accordingly, we reverse the order of the. Appellate Division and reinstate the decision of the Appeal Board conditionally disqualifying claimant from receiving benefits because he voluntarily left his employment without good cause.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Cooke taking no part.
Order reversed, without costs, and the decision of the Unemployment Insurance Appeal Board reinstated.

 The Federal employing agency’s findings are also conclusive regarding (1) whether or notithe employee performed Federal service, (2) the period of Federal service and (3) the amount of Federal wages (U. S. Code, tit. 5, § 8506, subd. [a], pars. [1-3]).