Wilbert MOORE and Malcolm Turner, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Philip ROSS, individually and as Industrial Commissioner of the State of New York, New York State Department of Labor, Louis Sitkin, individually and as Chairman of the New York State Unemployment Insurance Appeal Board, John A. Rogalin, individually and as a Member of the New York State Unemployment Insurance Appeal Board, James R. Rhone, individually and as a Member of the New York State Unemployment Insurance Appeal Board, Harry Zankel, individually and as a Member of the New York State Unemployment Insurance Appeal Board, and G. Douglas Pugh, individually and as a Member of the New York State Unemployment Insurance Appeal Board, Defendants.

No. 79 Civ. 1825 (RLC).

United States District Court,
S. D. New York.

Dec. 5, 1980.

---

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; Donald Sticklor, Asst. Atty. Gen., New York City, of counsel.

Kalman Finkel, Attorney–in–Charge, Civil Division, Morton B. Dicker, Attorney–in–Charge, Legal Aid Society, John E. Kirklin, Director of Litigation, Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, for plaintiffs; Paula Galowitz, Kenneth G. Rothstein, Constance P. Carden, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

■ This case has been brought as a class action challenging the constitutionality of procedures employed by the New York State Unemployment Insurance Appeal

Board ("Appeal Board" or "Board"). Pursuant to the state statutory scheme, N.Y. Labor Law §§ 500 *et seq.* (McKinney) (1977), unemployment insurance claims are decided by a process comprised of an initial determination and an option of administrative review for unsuccessful claimants.[1] The first level of review is a hearing before an Administrative Law Judge ("ALJ") whose decision may be appealed by any affected party to the Appeal Board. The Board has the power to review and reverse the ALJ's findings on all questions of fact and law, and its determinations in turn may be reviewed for substantial evidentiary support in the state courts. N.Y.Labor Law § 624.[2]

The two named plaintiffs, Wilbert Moore and Malcolm Turner, are unsuccessful claimants whose applications were initially upheld by the ALJ, and subsequently overturned by the Appeal Board. No appeal has been taken to the state courts. Their complaint is two–fold.[3] They argue that the due process clause of the Fourteenth Amendment is violated[4] by the Appeal Board in rejecting claims and reversing credibility determinations of a hearing examiner without holding a hearing *de novo* at which the Board itself is present to see the witnesses and hear their testimony. Plaintiffs contend that the Board's practice of denying claims and reversing a hearing examiner without stating the specific reasons and evidence relied upon for its adverse determination also implicates due process considerations. Plaintiffs argue that these procedures violate due process without regard to any subsequent outcome in the state courts.

In this litigation Moore and Turner seek to represent a class composed of all unsuccessful claimants for unemployment insurance in New York state who have been

1. Statutory procedures guarantee claimants a hearing before an ALJ provided they request it within 30 days of an unfavorable decision on the initial eligibility determination and that the ALJ's decision will be final on all matters of law and fact unless appealed within 20 days. New York Labor Law §§ 620(1), 621(1) (McKinney). On appeal, the Appeal Board has the power to hear argument, hold an additional hearing, remand to the ALJ or make a decision on the basis of the record and evidence previously submitted. *Id.* § 621(3). The Appeal Board must render a written decision promptly; the decision must include a statement of the issues, the findings of fact and conclusions and reasons for the decision. 12 N.Y.C.R.R. § 464.-1(a). The decision of the Appeal Board is final on all questions of fact and, unless appealed from, is final on all questions of law. Labor Law § 623. However, its regulations provide that the Appeal Board may reopen any of its decisions on its own motion or on the application of a party, 12 N.Y.C.R.R. § 463.6(a), and in reopened cases, its regulations provide that the Board may receive further evidence. 12 N.Y.C.R.R. § 463.6(b).

2. Judicial review is available in the Appellate Division of the New York Supreme Court to any party affected by the Appeal Board's decision provided that proceedings are initiated within thirty days of when the Board serves notice of its decision. New York Labor Law § 624. New York Labor Law § 623 states that the Appeal Board's decisions shall be final on all questions of fact. State courts have interpreted this to mean that decisions are final only if supported by substantial evidence. *See Fish-*

*er v. Levine*, 36 N.Y.2d 146, 150, 365 N.Y.S.2d 828, 325 N.E.2d 151 (1975) ("as to pure questions of fact, and factual inferences to be drawn therefrom, a decision of the Appeal Board, which then acts quasi–judicially, would be conclusive upon the courts if supported by substantial evidence." and *McGee v. Levine*, 324 N.Y.S.2d 455, 456 (3rd Dept. 1971) (the Board's "determination must be supported by substantial evidence; there must be a basis in the record for each of the Board's findings.")

3. In one of their briefs plaintiffs argued that they had an equal protection claim based on the fact that claimants whose cases were decided by the ALJ were able to appear before the actual decisionmaker whereas claimants whose cases were decided by the Appeal Board were not. This argument has no merit. The two sets of claimants do not constitute a suspect classification, and the Board's practices are at least minimally rational in that hearings before both the ALJ and the Board would raise administrative costs.

4. Plaintiffs' claim is brought under the due process clause and the fair hearing requirement of the Social Security Act. 42 U.S.C. § 503(a)(3). However, plaintiffs did not argue that the Act imposes any stricter procedural requirements than the due process clause itself. Accordingly, we interpret the Act as merely setting the context in which the due process claim is raised and make no decision on whether the Act's requirements are more stringent than those of fundamental due process.

aggrieved by one or the other of the above practices and procedures of the Appeal Board.

The parties have stipulated that it is a policy and practice of the Appeal Board 1) to review *de novo* and make a *de novo* determination of fact and law on all issues, including credibility, without necessarily holding a further hearing, and 2) to make findings of fact and render opinions and decisions, including reasons, without specifying the evidence relied upon other than a reference to the record and without necessarily making reference to the decision of the ALJ.

Defendants contend that the Board's decisions in the instant cases fully comport with due process standards, were clearly based on the record in each case and that the reasons for the Board's determinations are self–evident.

5. The examiner's decision in the Moore case in pertinent part reads:

The testimony at the hearing established that claimant was discharged due to his lateness after taking his son to school. Since claimant's family responsibilities constituted a personal, compelling reason under the law for his lateness, I find that he did not lose his employment due to misconduct in connection therewith.

6. The Appeal Board decision reads as follows:

The credible evidence establishes that claimant was late on December 19, 1977 after receiving warnings about latenesses. Although he knew that he would be late on that day he failed to notify his employer. In view of the contradictions in claimant's statements, we reject his contention that he was late due to a compelling reason. We conclude that the claimant lost his employment through misconduct in connection therewith.

7. According to the ALJ's opinion in the Turner case:

The employer's official regulations required that an employee, who was to be absent, notify his immediate supervisor of his intended absence. Claimant had done this prior to May 19, 1977, and his calls had been accepted. Instructions had been given prior to May 19, that his calls were not to be received by his immediate supervisor or any co–worker. Claimant called to report his intended absence on May 19, 1977. The person receiving the call, a shipping clerk, declined to pass the word along. Claimant made further attempts to contact the personnel manager. His calls were not put through. He came to

In Moore's case the crucial issue was whether he had had personal compelling reasons for not reporting to work on time or whether his lateness constituted misconduct and therefore a justifiable cause for discharge. The hearing examiner held that Moore's family responsibilities were the cause of his lateness and that no wilful misconduct was involved.[5] The Appeal Board reversed, rejecting Moore's claim of personal, compelling reasons for his lateness.[6]

In Turner's case the issue was whether he had called in to report his intended absence or was absent without giving notice in violation of company rules. The hearing examiner accepted Turner's testimony but the Appeal Board rejected it and held that Turner had lost his job because of misconduct.[7]

work in person to report his absence because of illness and he was not seen by the personnel manager, although he stood in the personnel manager's doorway and observed a conference between the personnel manager and other officers of the corporation. It is significant that claimant stayed on the employer's premises long enough to do work for them in delivering boxes to another floor and that he did this with the full consent and acquiescence of his supervisor, the lead mail clerk. In weighing the testimony it is noted that the employer's written instructions require an employee to give notice directly to his immediate supervisor. Claimant's immediate supervisor was not permitted to take notice from him. In this instance, therefore, the claimant complied with the employer's directions concerning giving notice of absence and the employer failed to accept and receive the notice they demanded. Here claimant was fired for failing to report his absence on May 19, 1977. Claimant did report his absence and the employer refused to receive the report. This is not misconduct on the claimant's part. I reject the employer's contention that claimant reported that he was in jail in the State of New Jersey for trespassing, and therefore, could not call to report his absence. I reject the employer's contention that threatening telephone calls were received by him on behalf of the claimant to prevent testimony on behalf of the employer. It is significant that the alleged theatres were not reported to the police and were not previously reported to the Department of Labor.

There are presently three motions before the court. Defendants have moved for judgment on the pleadings, alternatively on the grounds that the court should abstain under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and that plaintiffs have not presented any actionable claim. Plaintiffs have moved for class certification under Rule 23, F.R.Civ.P., and for summary judgment. Since defendants have relied upon matters not contained in the pleadings to support their motion, and plaintiffs have agreed that defendants' motion is properly treated as one for summary judgment, we will construe the case as presenting cross–motions for summary judgment, as well as a motion for class certification.

*Class certification*

■ Plaintiffs have moved for class certification under Rule 23(a), F.R.Civ.P., and Rule 23(b)(2), or in the alternative, Rule 23(b)(1)(A) or (B), F.R.Civ.P. Plaintiffs' claims are directed at the practices of the Appeal Board, and not at the statute or regulations pursuant to which the Board acts. While the requirements of Rule 23(a) as to numerosity, commonality, typicality, and adequate representation would seem to be met, certification of the class is not warranted under either Rule 23(b)(2), 23(b)(1)(A) or (B).

Despite the parties' stipulation as to Appeal Board practices, it is difficult to see how the issues raised here can be decided apart from the facts of each case. Thus, while it is possible that defendants' handling of appeals may in some instances violate due process, it cannot be said that defendants have "acted or refused to act on grounds generally applicable to the class," Rule 23(b)(2), F.R.Civ.P., and thus the prosecution of separate actions, rather than creating a risk of inconsistent adjudications, Rule 23(b)(1)(A), or impairing the ability of absent members to protect their interest, Rule 23(b)(1)(B), would be required to adjudicate the issues raised in each controversy.

■ Moreover, unemployment insurance is not a fixed and limited fund in danger of depletion, so the risks referred to in Rule 23(b)(1)(B) are not apposite. Since we can assume that a state agency will comply with due process requirements in all cases even when the requirements are articulated by declaratory judgments in individual actions, *see Vulcan Society v. Civil Service Commission,* 490 F.2d 387 (2d Cir. 1973); *McDonald v. McLucas,* 371 F.Supp. 831 (S.D.N.Y.) (Metzner, J.), *aff'd,* 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974), there will be no substantial risk of "inconsistent or varying adjudications" tending to establish "incompatible standards of conduct" for defendants. Rule 23(b)(1)(A), F.R.Civ.P. Class certification in this case would do little more than pose a risk of class members being bound by a judgment which does not rightfully apply to them. *Manners v. Romney,* E.D.N.Y., Civil Action No. 71 Civ. 550, slip opinion at 11–12 (Dooling, J.). Accordingly, the motion for certification is denied, and the cases will be treated as individual claims.

*The issue of abstention*

■ Defendants' argument for abstention under the doctrine of *Younger v. Harris, supra,* must be rejected. Although the administration of unemployment insurance programs arguably constitutes a significant state interest, there is presently no on–going proceeding with regard to the Moore and Turner cases in the New York state courts. The mere fact that Moore and Turner could have appealed, or could now appeal to the state courts is not grounds for

---

The Appeal Board held to the contrary as follows:

The evidence establishes that claimant did not call his employer within one hour prior to his starting time, as the employer required. Significantly, claimant had been placed on final warning and he knew that his job was in jeopardy if he continued to violate the attendance rules. We reject claimant's contention that he notified a co–worker of his absence, in view of the co–worker's testimony to the contrary. Under the circumstances we conclude that claimant lost his employment through misconduct in connection therewith.

*Younger* abstention. *See Chung v. Ross,* 78 Civ. 949 (S.D.N.Y.1978) (Stewart, J.). Abstention should not be used to impose an exhaustion of remedies requirement on civil plaintiffs raising federal constitutional claims against state administrative bodies, and we do not read *Levy v. Lewis,* 635 F.2d 960 (2d Cir. 1980) as reaching a contrary result. Unlike *Younger* and its progeny, e. g. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), both this case and the administrative proceedings below were initiated by the plaintiffs and present no features that would justify making "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation District v. U. S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

*Reversals of Credibility Determinations by the Appeal Board*

■ At the outset it should be noted that we join the courts which have held that unemployment insurance benefits cannot be treated differently from the AFDC benefits in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Pregent v. New Hampshire Dept. of Employment Security,* 361 F.Supp. 782 (D.N.H.1973), *vacated as moot,* 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974); *Java v. California Dept. of Human Resources Development,* 317 F.Supp. 875 (N.D.Cal.1970), *affirmed on other grounds,*[8] 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *White v. State of Vermont,* 335 F.Supp. 856 (D.Vt.1971); *Drumright v. Padzieski,* 436 F.Supp. 310

(E.D.Mich.1977). Because the individual's stake in the outcome of the Board's determinations is so vital, the due process requirements articulated in *Goldberg, supra,* apply here with full force. Not only will many unemployed persons face the same "brutal need" as welfare recipients, *see Goldberg v. Kelly,* 397 U.S. 254, 261, 90 S.Ct. 1011, 1016, 25 L.Ed.2d 287 (1970), but adverse determination of an unemployment insurance claim will in many cases be based upon an official finding of misconduct which will impair the claimant's chances of obtaining a decent job in the future. These requirements entitle the claimant to an evidentiary hearing at which counsel may be present, to an assurance that the decision-maker's conclusion will "rest solely on the legal rules and evidence adduced at the hearing," and to a statement of the reasons for the decision and the evidence relied upon. *Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022.

Defendants do not argue that the requirements of *Goldberg* are inapplicable. Rather they contend that the Board's current practices comply with these requirements. We are inclined to agree, at least insofar as its practices are represented by the two individual cases before us.

■ Nonetheless, we recognize that the issue is difficult and requires careful analysis. Plaintiffs acknowledge that the famous dicta of *Morgan v. United States,* 298 U.S. 468, 481, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936), "the one who decides must hear," cannot be taken literally in all circumstances.[9] There is no constitutional infirmity *per se* in having the hearing before an ALJ when the final decision is made by a Board which has only the record before it. Plaintiffs make the narrower argument

---

8. In *California Department of Human Resources Development v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), the Supreme Court found the Department's practices in violation of the Social Security Act's requirement that benefits be paid "when due," 42 U.S.C. § 503(a)(1), and therefore did not reach the due process issue.

9. In *National Nutritional Foods Association v. FDA,* 491 F.2d 1141 (2d Cir. 1974) Judge

Friendly noted that the dictum articulated in *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936) ("*Morgan I*"), if it ever was intended literally must have been abandoned shortly thereafter since *Morgan v. United States,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) ("*Morgan IV*") "took back most or all of what the first decision had given." 491 F.2d at 1144.

that when the Board reverses credibility determinations, claimants are entitled to appear before it to present evidence and to have their testimonial demeanor assessed first–hand.

Plaintiffs' contention is superficially appealing. The Supreme Court has recently noted the delicacy of reversing credibility determinations without appraising the witnesses in person. In holding that a federal court consistent with constitutional strictures could adopt the findings of a magistrate in a suppression hearing without holding a new hearing Chief Justice Burger stated, however, that the court assumed it

> unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions which we do not reach.

*United States v. Raddatz,* 447 U.S. 667, 681 n.7, 100 S.Ct. 2406, 2415 n.7, 65 L.Ed.2d 424, 48 USLW 4813, 4817 n.7 (June 23, 1980).

That there is substantial risk of arbitrariness when an ALJ's findings on credibility are reversed without a hearing *de novo* is attested to by numerous decisions holding such reversals not to be supported by substantial evidence. *See, e. g., Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Ward v. N. L. R. B.,* 462 F.2d 8 (5th Cir. 1972); *Penasquitos Village, Inc. v. N. L. R. B.,* 565 F.2d 1074 (9th Cir. 1977) ("when the Board second–guesses the Examiner and gives credence to testimony which he has found–either expressly or by implication–to be inherently untrustworthy, the substantiality of that evidence is tenuous at best" *id.* at 1077); and compare *NLRB v. Jackson Maintenance Corp.,* 283 F.2d 569 (2d Cir. 1960) (Board's determination upheld on slight but undiscredited evidence) and *NLRB v. Jamaica Towing, Inc.,* 602 F.2d 1100 (2d Cir. 1979) (rejection of ALJ's findings upheld because issue was not credibility). Significantly, however, none of these cases hold that credibility reversals will necessarily be found unsupported by substantial evidence in the absence of a second hearing before the final decisionmaker. Rather the general rule is that the Board "may certainly overrule [the ALJ], even where credibility is involved, if his findings conflict with strong inferences from evidence which he credited." *Utica Observer– Dispatch, Inc. v. NLRB,* 229 F.2d 575, 577 (2d Cir. 1956). But "departures from the Examiner's findings are vulnerable if they fail to reflect attentive consideration to the Examiner's decision." *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 853 (D.C. Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

■ The question of substantial evidence is relevant to our inquiry because governmental determinations unsupported by substantial evidence may constitute irrational action and thus a denial of due process. As Chief Judge MacMahon has noted,

> The terms "arbitrary" and "capricious" embrace a concept which emerges from the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and operates to guarantee that the acts of government will be grounded on established legal principles and have a rational factual basis. A decision is arbitrary or capricious when it is not supported by substantial evidence or when there is no reasonable justification for the decision.

*Canty v. Board of Education, City of New York,* 312 F.Supp. 254, 256 (S.D.N.Y.1970).

■ Procedural due process review looks at procedures regularly employed to determine whether they inherently pose unacceptable risks of arbitrary governmental action. Substantial evidence review looks at how the procedures were followed in a specific case to decide whether, after an examination of specific pertinent evidence, a considerable risk of arbitrariness is apparent.

■ In some instances a decision unsupported by substantial evidence may also be the product of decisionmaking procedures

that violate due process. But we normally associate due process claims with an assessment of a statutory scheme of administrative review. Judicial oversight of particular determinations made pursuant to the statutory scheme usually take the form, instead, of substantial evidence review. However, this distinction should not be frozen into a principle that due process is implicated only when the risk of arbitrariness is apparent on the face of the articulated statutory formula. A statutory scheme may be applied in a manner that presents the same inherent and predictable risk of arbitrariness that would justify invalidation of the legislation if this defect had been apparent from a reading of the enactment. In such circumstances the need for due process is not lessened by the fact that arbitrariness is traceable to administrative discretion rather than to acts of the legislature. Cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410–414, 91 S.Ct. 814, 820–22, 28 L.Ed.2d 136 (1971) (action being the product of agency discretion does not in general establish nonreviewability under the Administrative Procedure Act).

 Notwithstanding this overlap, due process and substantial evidence review are not coextensive. In some circumstances a close reading of the record will show a decision to be unsupported by substantial evidence even though there is nothing inherently arbitrary about the decisionmaking procedures. Due process violations are to be found when the decisionmaking process is intrinsically defective such that individual determinations unsupported by substantial evidence will predictably recur.

 The importance of this distinction is highlighted in cases, such as the one currently before us, where substantial evidence review is delegated to the state courts. The United States Supreme Court in other contexts has expressed displeasure with the idea of federal due process claims being the basis for federal court adjudication when adequate remedies are provided by a state forum. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976);

Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Court's concern that due process not be construed too expansively is apposite to situations where the availability of state court review diminishes the probability of grievous harm caused by erroneous determinations going unredressed. The likelihood of erroneous determinations, the corresponding need for additional procedures to reduce this likelihood, and the magnitude of harm caused to individual claimants by erroneous adverse adjudications are all major factors to be taken into account in deciding what process is due. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Thus in applying the Mathews balancing test we must take into account the fact that judicial review in the state courts of the claims here is guaranteed by statute, and where state court substantial evidence review is provided statutorily, it would be inappropriate to proclaim a federal due process violation on grounds which are simply tantamount to saying that the particular decision is unsupported by substantial evidence. Moreover, it would be improper for us to render any decision on whether the Board's reversals of ALJ's credibility findings in the Moore and Turner cases are supported by substantial evidence. The question has not been raised by the parties, and furthermore such review has been committed by statute to the Appellate Division of the New York State Supreme Court. N.Y.Labor Law § 624 (McKinney).

 However, this does not mean that the availability of state court review automatically insulates the Appeal Board from due process scrutiny. If the decisionmaking procedure is inherently defective, remediation is not effected by the availability of subsequent judicial review. Where many claimants will face destitution if benefits are denied it is important not only that their claims be given fair consideration, but that fair consideration be given promptly. Goldberg v. Kelly, supra; California Department of Human Resources Develop-

*ment v. Java, supra.* If the Board's practice is inherently prone toward arbitrariness such that we can foresee numerous claimants being put through an additional set of appeals to receive the type of fair consideration which the Board should have provided in the first place, then it would be unconscionable to approve the defective practices on the ground that claimants could later appeal. It is preferable that arbitrary procedures be corrected than to require numerous aggrieved claimants to appeal individually in order to secure relief from administrative caprice.

▮ With these considerations in mind we turn to the specific matter before us of the Appeal Board reversing credibility determinations without holding further hearings. Regardless of the wisdom of this practice, we cannot say that it is arbitrary per se. As has been explained in *Penasquitos Village, Inc. v. N. L. R. B.,* 565 F.2d 1074, 1078 (9th Cir. 1977), rejection of an examiner's credibility determinations can be grounded in "testimonial inferences" which are based on demeanor at the hearing, but they can also be based on "derivative inferences" which are drawn from evidence contained in the record itself. While it would not be permissible for the Board to substitute its own assessment of a witness's demeanor without seeing and hearing the witness personally, reversal grounded on inferences derived from evidence contained in the record is not necessarily arbitrary or a violation of due process. As is suggested by *Utica Observer–Dispatch, supra,* 229 F.2d at 577, the inferences must be derived from evidence credited by the examiner, or if based upon evidence rejected by the hearing officer, there must be other creditable evidence in the record which makes the discredited evidence viable, thereby warranting a departure from the examiner's holding. When the Appeal Board's opinion demonstrates that it has made a *bona fide* effort to justify credibility reversals by reliance on matters in the record, due process is not violated because the requirement that "administrative due process must be found in the administrative record," *Garvey v. Freeman,* 397 F.2d 600, 611 (10th Cir. 1968), has been met.

▮ In Moore's case the Appeal Board made a *bona fide* attempt to base its divergent opinion as to Moore's credibility on evidence contained in the record. It referred to "contradictions in claimant's statements," which are supposedly apparent in the record, and it noted that despite prior warnings about lateness, Moore had made no effort to contact his employer as would be expected of an employee who was unavoidably detained yet attempting to be punctual. In Turner's case the Board rejected "claimant's contention that he notified a co-worker of his absence, in view of the co-worker's testimony to the contrary." Although the hearing examiner reached a different conclusion, he did not specifically discredit the testimony of the co-worker. Thus it appears that the Board could properly rely upon such testimony, or at least the impropriety of such reliance is not so patent as to constitute a due process violation.

▮ In neither case do we decide whether the Board's evidence was sufficient to support reversal of the examiner's findings on credibility. That task is properly left to the state courts in their application of the substantial evidence test. We merely hold that in these two cases the Board's opinions adequately demonstrate that the Board was engaged in the procedure of deriving inferences contrary to the examiner's findings from evidence contained in the record. Thus in these two cases the Board was not required to hold a further hearing before reversing credibility determinations.

We recognize that a different question would be presented if the Board's opinions were not written in good faith. To use superficially adequate procedures to effect a deliberate concealment of arbitrariness would certainly violate due process. However, no evidence presented in this lawsuit casts doubt upon the *bona fide* nature of the Board's deliberations. In the absence of evidence to the contrary, a state official's good faith must be presumed. *See Starr v. Federal Aviation Administration,* 589 F.2d

307, 315 (7th Cir. 1978); *cf. F. C. C. v. Schreiber*, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976).

■ We also recognize that in Turner's case the ALJ's opinion is substantially more detailed and persuasive than the Board's opinion. However, that is not the question before us. We are called upon only to decide whether the procedures followed by the Board are inherently defective, and on this point we cannot accept plaintiff's contentions. It may be that sound administrative policy would dictate that further hearings be held routinely whenever credibility determinations are reversed. The heightened risk of error under such circumstances, see authorities cited *supra* at 7, may well justify the additional time and expense of a second hearing. However, this argument is properly addressed to the New York legislature which defines the powers and functions of the Appeal Board. Recent precedents of the Second Circuit have made clear that as long as an agency's methods of deciding on the record are not inherently prone to arbitrariness, the due process clause will not dictate what specific procedures must be used by the Board. *See Fields v. Blum*, 629 F.2d 825 (2d Cir. 1980) (reversing a district court finding of due process violation in the State's practice of allowing administrative appeals in welfare cases to be decided by a designee of the Commissioner who has not read or heard the complete transcript of the hearings in such cases). *Also see* companion case *Yaretsky v. Blum*, 629 F.2d 817 (2d Cir. 1980).

## The Board's Statements of Reasons and Evidence

Beginning with *Goldberg v. Kelly, supra*, several Supreme Court decisions have held that the decisionmaker must state reasons for his determination and give the evidence relied upon. In addition, this requirement has been applied to welfare terminations, parole revocation (*Morrissey v. Brewer*, 408 U.S. 471, 488–9, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972)), probation revocation

(*Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 33 L.Ed.2d 331 (1973)) and prison disciplinary proceedings (*Wolff v. McDonnell*, 418 U.S. 539, 564–5, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). It has also been applied to discharge of a school superintendent (*Staton v. Mayes*, 552 F.2d 908, 916 (10th Cir. 1977)), discharge of a school teacher (*Kinsella v. Board of Education*, 378 F.Supp. 54, 60 (W.D.N.Y.1974) (three judge panel), *aff'd without published opinion*, 542 F.2d 1165 (2d Cir. 1976)), and denial of application for parole (*United States ex rel. Johnson v. Chairman, New York State Board of Parole*, 500 F.2d 925 (2d Cir.), *vacated sub nom Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974); *Haymes v. Regan*, 525 F.2d 540 (2d Cir. 1975); *Zurak v. Regan*, 550 F.2d 86 (2d Cir.) *cert. denied* 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

Defendants concede that the requirement applies to the Board's decisions, but contend that the Board's current practices constitute adequate compliance. Plaintiffs admit that the statement of reasons need not amount to "formal findings of fact and conclusions of law," *Goldberg, supra*, 397 U.S. at 271, 90 S.Ct. at 1022, but claim that the Board's practices are inadequate in two respects. They object to the Board's supporting its factual determinations by referring to the record rather than specifically repeating the evidence in its opinion. They also contend that a mere statement of reasons for the decision is not sufficient if it does not include an explanation of why the Board reversed the hearing examiner's conclusions. Defendants have stipulated that the Board does not necessarily specify "the evidence relied upon other than a reference to the record," or make any specific reference to the decision of the ALJ. *Supra* at 2.

The major purposes of the reasons and evidence requirement are "to protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations," *Zurak v. Regan, supra*, 550 F.2d at 95, to safeguard against a decision on *ex parte* evidence, *Staton v.*

*Mayes, supra,* 552 F.2d at 916, and perhaps most importantly to facilitate judicial review by enabling a court to determine whether the decision was based upon "an impermissible reason," or "no reason at all." *Johnson, supra,* 500 F.2d at 943; *Haymes, supra,* 525 F.2d at 544. In order to accomplish these purposes the statement must "evince the Board's consideration of relevant factors" and make accessible "the essential facts from which the Board's inferences have been drawn." *Haymes, supra* at 544. An additional purpose has been highlighted by Congress in its explanation of the similar requirement in the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A):

> The requirement that the agency must state the basis for its findings and conclusions means that such findings and conclusions must be sufficiently related to the record as to advise the parties of the record basis.

"Senate Report on A.P.A.", 79th Congress, 1st Session, S.Rep.No. 752 (1945).

■■■ In appraising the Board's decisions claimants and reviewing courts have available to them the record of the hearing as well as the Board's written decision. Whether a statement is sufficiently detailed and informative to comport with minimum due process depends upon whether it satisfies the purposes mentioned above when read in conjunction with the hearing record. The more extensive and confusing a record is, the more detailed and informative the statement must be. However, hearings on claims for unemployment insurance tend to be brief and uncomplicated. Thus a cursory statement of reasons and evidence will often be sufficient. There is no constitutional infirmity *per se* in referring to the record, rather than repeating evidence in the record, if the factual inferences drawn are specific enough to make apparent upon a reading of the record what the supporting evidence is.

■■■ Similarly, there is no infirmity in not referring specifically to the hearing examiner's findings, provided the Board's opinion makes it possible to infer why the Board rejected those findings. "Due Proc-

ess, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Also see Simard v. Board of Education of Town of Groton,* 473 F.2d 988, 992 (2d Cir. 1973). To require that the Board specifically address the ALJ's decision would be to elevate form over substance in a manner contrary to the spirit of *Mathews v. Eldridge, supra.*

■■■ To be sure, judicial review is facilitated by an explanation of why the examiner's findings were discarded. Appraising the adequacy of such an explanation is a principal task of the reviewing court. *Greater Boston Television Corp. v. FCC, supra,* 444 F.2d 841. *Also see Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1264 (4th Cir. 1974) ("administrative agencies must explain the grounds for their rejection of an ALJ's disposition of a case.") However we can find no due process violation in the Moore and Turner cases because the same portions of the Board's opinions that demonstrate the inappropriateness of requiring a further hearing also explain why the Board rejected the examiner's findings. The fact that the Board's reasoning is not fully perspicuous, is not fatal so long as the necessary inferences can reasonably be drawn. The Board's cursory opinions in the Moore and Turner cases do not appear inherently unsuited for this purpose. We recognize that the bald reference to contradictions in Moore's testimony may not be adequately clarified by a reading of the record, in which case the Board's decision could properly be found unsupported by substantial evidence. However, that determination is best left to the state courts pursuant to New York Labor Law § 624. The adequacy of the Board's explanation for rejecting the examiner's findings is a matter for substantial evidence review; due process requires only a cognizable attempt to give an explanation. Although the Board's reference to contradictions in the testimony in the Moore case is neither am-

ply supported nor carefully articulated in the opinion, it does pass muster as a cognizable attempt, albeit barely so. In any event, we find no due process violations in either case.

Therefore, summary judgment is granted to defendants and plaintiffs' complaint is dismissed.

IT IS SO ORDERED.