Wilbert **MOORE** and Malcolm Turner, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

Philip **ROSS**, individually and as Industrial Commissioner of the State of New York, New York State Department of Labor; Louis Sitkin, individually and as Chairman of the New York State Unemployment Insurance Appeal Board; John A. Rogalin, individually and as a Member of the New York State Unemployment Insurance Appeal Board; James R. Rhone, individually and as a Member of the New York State Unemployment Insurance Appeal Board; Harry Zankel, individually and as a Member of the New York State Unemployment Insurance Appeal Board; and G. Douglas Pugh, individually and as a Member of the New York State Unemployment Insurance Appeal Board, Defendants-Appellees.

No. 1308, Docket 81–7037.

United States Court of Appeals, Second Circuit.

Argued June 14, 1982.

Decided Aug. 17, 1982.

Certiorari Denied Jan. 10, 1983.

See 103 S.Ct. 750.

---

Kenneth Rothstein, The Legal Aid Society, New York City (Kalman Finkel, Morton B. Dicker, John E. Kirklin, Nancy Haber, Marshall Owen, Rachel Vorspan, The Legal Aid Society, New York City, of counsel), for appellants.

Donald Sticklor, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N. Y., George D. Zuckerman, Asst. Sol. Gen., New York City, of counsel), for appellees.

Before OAKES, MESKILL and KEARSE, Circuit Judges.

OAKES, Circuit Judge:

This appeal challenges the constitutionality of two practices of the New York State Unemployment Insurance Appeal Board. Claimants Wilbert Moore and Malcolm Turner contend that the Board's practices

of reversing credibility determinations by administrative law judges (ALJs) without holding additional hearings, and of reversing ALJs' decisions without specifying the evidence relied upon, violate their rights to due process and fair hearing. Judge Robert L. Carter of the Southern District of New York found no due process violation in either practice. *Moore v. Ross*, 502 F.Supp. 543 (S.D.N.Y.1980). We affirm.

## FACTS

Moore and Turner both applied for unemployment insurance benefits after they were dismissed from their jobs. Moore's local office determined that he was entitled to benefits, and his employer requested a hearing before an ALJ; Turner's local office found him not entitled to benefits, and he requested a hearing before an ALJ.[1]

After conducting hearings, the ALJs in both cases found the claimants entitled to benefits. In Moore's case, the crucial issue was whether he had compelling personal reasons for reporting late to work one morning. The ALJ, finding that "claimant was discharged due to his lateness after taking his son to school" when his wife was called away on a family emergency, held that Moore's lateness was not misconduct disentitling him to benefits. In Turner's case, the crucial issue was whether he had called in to report his intended absence as required by his employer's rules. The ALJ found that Turner had "report[ed] his absence and the employer [had] refused to receive the report."

The respective employers appealed these rulings to the Appeal Board,[2] which reversed and denied benefits in both cases. The Board did not hold a further hearing in either case, but based its decision on the record and testimony already developed. In Moore's case, the Board's opinion stated:

The credible evidence establishes that claimant was late on December 19, 1977 after receiving warnings about latenesses. Although he knew that he would be late on that day he failed to notify his employer. In view of the contradictions in claimant's statements, we reject his contention that he was late due to a compelling reason. We conclude that the claimant lost his employment through misconduct in connection therewith.

In Turner's case, the Board's opinion stated:

The evidence establishes that claimant did not call his employer within one hour prior to his starting time, as the employer required. Significantly, claimant had been placed on final warning and he knew that his job was in jeopardy if he continued to violate the attendance rules. We reject claimant's contention that he notified a co-worker of his absence, in view of the co-worker's testimony to the contrary. Under the circumstances we conclude that claimant lost his employment through misconduct in connection therewith.

Neither claimant appealed the Board's decision in his case to a state court.[3] Instead Moore and Turner filed a class complaint in the Southern District of New York for declaratory and injunctive relief and damages, alleging that the Appeal Board's challenged practices were invalid under both the Due Process Clause of the Four-

---

1. N.Y. Labor Law § 620(1)(a) provides that "[a] claimant who is dissatisfied with an initial determination of his claim for benefits or any other party affected by such determination may . . . request a hearing" before an ALJ. The ALJ must promptly render a written decision, "containing the reasons therefor," *id.* § 620(3), which shall be "final on all questions of fact and law" unless appealed from, *id.* § 623.

2. N.Y. Labor Law § 621(1) allows the claimant or the employer to appeal an ALJ's decision on a contested benefit claim to the Appeal Board. The Appeal Board may decide an appeal "on the basis of the record and of evidence previously submitted," or "may in its discretion hear argument or hold a further hearing" or remand to an ALJ. *Id.* § 621(3). The Board must promptly render a written decision "with the reasons therefor," *id.*, which "shall be final on all questions of fact and, unless appealed from, shall be final on all questions of law," *id.* § 623.

3. N.Y. Labor Law § 624 provides that parties may appeal the Board's decisions to the Appellate Division of the New York Supreme Court, Third Department, and may appeal that court's decisions to the New York Court of Appeals.

teenth Amendment and the fair hearing requirement of the Social Security Act.[4] The parties stipulated that the challenged practices were the following:

> 1) It is a policy and practice of the New York State Unemployment Insurance Appeal Board to review *de novo* and make a *de novo* determination on all issues, including credibility, without necessarily holding a further hearing.

> 2) It is a policy and practice of the New York State Unemployment Insurance Appeal Board to make findings of fact, opinions and decisions, including reasons, without specifying the evidence relied upon other than a reference to the record and without necessarily making reference to the decision of the Administrative Law Judge.

The parties then cross-moved for summary judgment, and appellants moved for class certification. Judge Carter granted the appellees' motion for summary judgment, denied class certification, and dismissed the complaint.

## DISCUSSION

### A. *Reversals of Credibility Determinations*

Judge Carter held that the Appeal Board's practice of reversing ALJs' credibility determinations without holding further hearings does not violate due process. First, he found that in both Moore's and Turner's cases, the Appeal Board "made a *bona fide* effort to justify credibility reversals by reliance on matters in the record . . . ." *Moore v. Ross*, 502 F.Supp. at 554. The Board did not depart from the ALJs' "testimonial inferences," *i.e.*, inferences dependent on observation of the witnesses' demeanor, Judge Carter reasoned, but rather drew contrary "derivative inferences" based on other evidence in the record. *Id.* (citing *Penasquitos Village, Inc. v. NLRB*,

565 F.2d 1074, 1078 (9th Cir. 1977)). While the Board could not legitimately draw its own testimonial inferences "without seeing and hearing the witness personally," Judge Carter wrote, the Board's reliance on derivative inferences in reversing an ALJ's credibility determination is not inherently arbitrary. 502 F.Supp. at 554.

Second, Judge Carter suggested, the availability of judicial review of the Board's decisions in the state courts, N.Y. Labor Law § 624, diminishes the likelihood that erroneous determinations will go unredressed. 502 F.Supp. at 553. Thus even though Judge Carter acknowledged that an individual's interest in unemployment benefits, similar to that in welfare benefits, *see Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), is "vital," 502 F.Supp. at 551, he suggested that existing state procedures satisfied the requirements of due process under the standards set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 349, 96 S.Ct. 893, 903, 909, 47 L.Ed.2d 18 (1976).

■ We affirm, although we do not adopt Judge Carter's first rationale. We readily agree that the Appeal Board would be free to overrule an ALJ's findings crediting or discrediting a witness's testimony if those findings were in conflict with strong inferences from documentary evidence, from undisputed facts in the record, or from other evidence credited by the ALJ, *see Utica Observer-Dispatch, Inc. v. NLRB*, 229 F.2d 575, 577 (2d Cir. 1956). We do not think it quite accurate, however, to characterize the Board's reversal in Moore's or Turner's case as depending solely on such derivative inferences.

In Moore's case, it is true that the Board found evidence in the record that Moore had previously been late and had been warned about lateness. These findings

---

4. States receiving federal funds for unemployment benefits must provide an "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied . . . ." 42 U.S.C. § 503(a)(3). Judge Carter did not consider this statutory claim separately from plaintiffs' constitutional claim, because "plaintiffs did not argue that the Act imposes any stricter procedural requirements than the due process clause itself." 502 F.Supp. at 548 n.4. Nor do plaintiffs make such an argument on appeal, and accordingly, we will not consider the statutory claim separately.

were relevant to determining whether any one lateness constituted misconduct under N.Y. Labor Law § 593(3), *see Ramsey v. Ross*, 63 A.D.2d 1061, 1061–62, 405 N.Y.S.2d 808, 810 (3d Dep't 1978), and involved no reversal of a credibility determination by the ALJ, who did not mention or implicitly discredit this evidence in her opinion. But the Board's decision reversing the ALJ also rejected Moore's account of his reasons for being late on the day he was fired "[i]n view of the contradictions in claimant's statements." On cross-examination during the hearing, Moore had resolved the "contradiction" between his statement that he drove his son to the school bus stop and his statement that he drove his son to school by explaining that he drove his son to the bus stop and then, because the bus was late, directly to school. It is implicit in the ALJ's opinion that she believed him. Thus the Appeal Board's decision turned at least in part on the Board's substitution of its own testimonial inferences concerning Moore's credibility for those of the ALJ.

In Turner's case, the Appeal Board similarly took into account record evidence of previous latenesses and warnings, but it also plainly resolved conflicting testimony in the opposite way from the ALJ. The ALJ explicitly found from Turner's testimony that Turner had called to report his intended absence, but that "[t]he person receiving the call, a shipping clerk, [had] declined to pass the word along," and that Turner's further attempted calls to the personnel manager had not been put through. The ALJ thus implicitly discredited the employer's witnesses, who testified that Turner had not telephoned. The Appeal Board, however, stated, "We reject claimant's contention that he notified a co-worker of his absence, in view of the co-worker's testimony to the contrary," a credibility determination material to the Board's decision to reverse the ALJ, and one based wholly on testimonial inferences.

We therefore confront the question whether it violates due process for the Appeal Board to make a credibility finding contrary to an ALJ's, based on testimonial inferences, without holding another hearing at which it may personally observe demeanor. We hold that it does not, for the second reason Judge Carter suggested. Substantial evidence review in state court provides constitutionally sufficient protection against the risk of arbitrariness in any decision by the Board reversing an ALJ's assessment of testimonial credibility.

■ As in federal administrative practice, where the general rule under the Administrative Procedure Act is that an agency reviewing an ALJ's decision "has all the powers which it would have in making the initial decision," 5 U.S.C. § 557(b), the Board, not the ALJ, is the ultimate finder of fact. Its findings, if supported by substantial evidence, are conclusive upon state courts reviewing its decisions. *See Fisher v. Levine*, 36 N.Y.2d 146, 150, 325 N.E.2d 151, 154, 365 N.Y.S.2d 828, 832 (1975); *McGee v. Levine*, 37 A.D.2d 785, 785, 324 N.Y.S.2d 455, 456 (3d Dep't 1971). Credibility determinations are questions of fact within the Board's province, *see DiMaria v. Ross*, 52 N.Y.2d 771, 773, 417 N.E.2d 1004, 1005, 436 N.Y.S.2d 616, 617 (1980); *Lester v. Catherwood*, 30 A.D.2d 1025, 294 N.Y.S.2d 323 (3d Dep't 1968), which the Board may resolve differently from the ALJ as long as its resolution is supported by substantial evidence, *see, e.g., Schlicker v. W. R. Blake & Sons*, 55 A.D.2d 789, 389 N.Y.S.2d 913 (3d Dep't 1976); *Mankowski v. Levine*, 50 A.D.2d 962, 375 N.Y.S.2d 683 (3d Dep't 1975). This too is analogous to federal administrative practice. The credibility findings of an ALJ are not binding on federal agencies, *see United States v. Raddatz*, 447 U.S. 667, 680, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980); 3 K. Davis, *Administrative Law Treatise* § 17.16, at 327 (2d ed. 1980), nor must an agency give them as much deference as an appellate court must give a trial court's findings under the "clearly erroneous" standard, *see FCC v. Allentown Broadcasting Corp.*, 349 U.S. 358, 364, 75 S.Ct. 855, 859, 99 L.Ed. 1147 (1955) (rejecting Judge Learned Hand's view that a hearing examiner's findings based on the demeanor of a witness should not be overruled by an agency without a "very sub-

stantial preponderance in the testimony as recorded").

Substantial evidence review protects against the danger that ultimate administrative factfinders who have not heard the witnesses testify will arbitrarily reverse the credibility findings of ALJs who have heard the testimony. In federal administrative practice, it is well established that a hearing examiner's report is "part of the record" on which a reviewing court assesses the substantiality of evidence supporting an agency decision, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951), and that the significance of the hearing examiner's report "depends largely on the importance of credibility in the particular case," *id.* at 496, 71 S.Ct. at 468. Federal reviewing courts thus give special weight to ALJs' credibility findings. *See Butler-Johnson Corp. v. NLRB*, 608 F.2d 1303, 1305 (9th Cir. 1979); *Penasquitos Village, Inc. v. NLRB*, 565 F.2d at 1079 ("the special deference deservedly afforded the administrative law judge's factual determinations based on testimonial inferences will weigh heavily in our review of a contrary finding by the Board"); *Ward v. NLRB*, 462 F.2d 8, 12–13 (5th Cir. 1972). Accordingly, reviewing courts have often found federal decisions unsupported by substantial evidence when they hinge on assessments of credibility contrary to those made by the ALJ who heard the witnesses. *See, e.g., Penasquitos Village, Inc. v. NLRB*, 565 F.2d at 1083–84; *Ward v. NLRB*, 462 F.2d at 12 ("when the Board second-guesses the Examiner and gives credence to testimony which he has found—either expressly or by implication—to be inherently untrustworthy, the substantiality of that evidence

is tenuous at best"); *NLRB v. Universal Camera Corp.*, 190 F.2d 429, 431 (2d Cir. 1951), *on remand from* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We cannot assume that the state courts will not adhere to these basic principles of substantial evidence review, and we think it unlikely that a decision of the Appeal Board rejecting the credibility findings of an ALJ without a further hearing would be found supported by substantial evidence unless it was based on something more than disputed testimony. *Cf. Penasquitos Village, Inc. v. NLRB*, 565 F.2d at 1076 ("we have found no decision, nor has one been cited to us, sustaining a finding of fact by the [National Labor Relations] Board which rests *solely* on testimonial evidence discredited either expressly or by clear implication by the administrative law judge"). Nor can we require state administrative agencies to provide stricter process than federal agencies. We have never held that due process was violated in federal administrative proceedings because agencies made *de novo* credibility determinations based only on the paper record.[5] As Judge Friendly wrote in *Utica Mutual Insurance Co. v. Vincent*, 375 F.2d 129, 131 (2d Cir.), *cert. denied*, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967).

Utica finds in the due process clause of the Fifth Amendment a requirement that when there are issues of credibility, as was assumed to be true here, no determination of fact may be made unless the decider has either seen the witnesses himself or has been furnished with a report as to credibility by another who has . . . . We discern no such absolute in the history laden words of the Fifth Amendment;

---

**5.** Nor do authorities relied upon by appellants establish this proposition. Dictum in *United States v. Raddatz*, 447 U.S. 667, 681 n.7, 100 S.Ct. 2406, 2415 n.7, 65 L.Ed.2d 424 (1980), suggesting that while district judges' adoption of magistrates' credibility findings on suppression motions did not violate due process, "serious questions" might be raised by their rejection of magistrates' credibility findings, is inapplicable here. Administrative, not criminal, proceedings are here in issue, and as *Raddatz* explicitly noted, the ultimate factfinder in administrative proceedings need not have heard

the witnesses testify, and may give whatever deference it finds appropriate to the findings of the ALJ who has heard the witnesses testify, *id.* at 680, 100 S.Ct. at 2414; *see also id.* at 698–99, 100 S.Ct. at 2424–2425 (Marshall, J., dissenting). And the due process violations found in *Califano v. Yamasaki*, 442 U.S. 682, 696–97, 99 S.Ct. 2545, 2555–56, 61 L.Ed.2d 176 (1979), and *Schwingel v. Harris*, 631 F.2d 192 (2d Cir. 1980), both involved the failure to provide any oral hearing with respect to an issue—namely, fault—that turned on credibility, *see id.* at 197, a circumstance absent here.

Utica would freeze what is usually a sensible rule of judicial administration into a constitutional imperative.

Because the requirement that the Appeal Board's findings rest on substantial evidence already safeguards claimants from erroneous denials of unemployment benefits turning on credibility, the Due Process Clause of the Fourteenth Amendment does not require that the Board provide the additional safeguard of holding *de novo* hearings before reversing ALJs' credibility determinations. *See Mathews v. Eldridge*, 424 U.S. at 335, 349, 96 S.Ct. at 903, 909.

B. *Specificity of Appeal Board Opinions*

■ We agree with Judge Carter that the Board's opinions in Moore's and Turner's cases, although "cursory," 502 F.Supp. at 556, are not so insufficient as to violate due process. In each case, the Board indicated on what grounds it had reversed the ALJ, alerting both the parties and any reviewing court to the decision's broad basis. Each opinion was sufficient to allow a reviewing court to determine whether the Board had relied solely on the evidence in the record, *see Goldberg v. Kelly*, 397 U.S. at 271, 90 S.Ct. at 1022, and to identify, at least implicitly, the Board's disagreement with the ALJ on matters of credibility.

Because explicit reasons for the reversals in Moore's and Turner's cases were spelled out, we decline to fault the Board for failing "to identify expressly an awareness that it was disagreeing with the ALJ," *see Local No. 441, International Brotherhood of Electrical Workers v. NLRB*, 510 F.2d 1274, 1276 (D.C.Cir.1975), even though we think it would have been far better if the Board had given a fuller explanation of the grounds for its disagreement with the ALJ's credibility findings, *see General Dynamics Corp. v. Occupational Safety and Health Review Commission*, 599 F.2d 453, 463 (1st Cir. 1979). We suspect that the New York courts would agree that any rejection of the ALJ's credibility findings which is not only unelaborated, but also without justification in the record considered as a whole, should be reversed as unsupported by substantial evidence.

In light of our agreement with Judge Carter that Moore and Turner were not deprived of due process by the practices of the Appeal Board, we need not reach the question whether a class represented by them should have been certified. Judgment affirmed.