■ In the Matter of the Claims of ADRIAN GAAR et al., Respondents. NEW YORK DISTRICT, KRAFT, INC., DAIRY GROUP, Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed December 23, 1981, which ruled that claimants were entitled to receive benefits. Appellant New York District, Kraft, Inc., Dairy Group (New York District), a division of Kraft, Inc., is engaged in the business of manufacturing and distributing ice cream and other frozen dessert products. The New York District maintains a manufacturing facility in Long Island City and a distribution facility in Farmingdale, Long Island. Claimants are members of Local 757, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 757) who are employed by the New York District at its Long Island City and Farmingdale facilities. Following the expiration of a collective bargaining agreement between Local 757 and the New York District on April 30, 1980, Local 757 struck the New York District at both its Long Island City and Farmingdale locations. Six weeks later, on June 12, 1980, Local 757 ratified the final offer of the New York District and the strike ended. The strike settlement included an agreement that the New York District could recall employees without regard to seniority for the first five days after the strike so as to most efficiently resume its operations. Immediately following ratification, New York District supervisors began contacting employees with instructions to report to work on Friday, June 13, and on subsequent days. Early the following Monday morning on June 16, 1980, members of Local 380 of the International Brotherhood of Teamsters, a "sister union" of Local 757, arrived from Framingham, Massachusetts, and began picketing at the Long Island City and Farmingdale facilities. One week earlier, Local 380 had struck its employer, Kraft, Inc., Dairy Group, Boston District (Boston District) following the expiration of their collective bargaining agreement with the Boston District. New York District employees who reported for work Monday morning refused to cross the Local 380 picket lines. Employees who were inside the plants when the pickets arrived left and both the Long Island City and Farmingdale facilities were forced to shut down. New York District supervisors contacted their employees and instructed them not to report for work until further notice. The Boston pickets left the New York District facilities on July 7, 1980, whereupon it resumed normal operations. Claims for unemployment benefits were filed by members of Local 757 between May 1 and July 7, 1980. The Commissioner of Labor determined that under subdivision 1 of section 592 of the Labor Law, claimants were subject to a seven-week suspension of benefits beginning May 1, 1980 because their unemployment beginning on April 30, 1980 was a result of "a strike, lockout, or other industrial controversy in the establishment in which [they were] employed" (Labor Law, § 592, subd 1). Claimants did not dispute this determination. The commissioner further determined, however, that claimants were subject to a second seven-week suspension beginning June 17, 1980 because a separate industrial controversy arose on June 16 of that year when claimants refused to cross the Local 380 picket line causing the New York District to shut down. Claimants appealed this second determination to an administrative law judge (ALJ) and hearings were held. According to a stipulation entered into by the commissioner, the New York District and claimants, the sole issue to be presented to the ALJ at these hearings was "whether these claimants lost their employment on or after June 16, 1980 because of a strike, lockout or other industrial controversy in the

establishment in which they were employed." In his decision, the ALJ reversed the determination of the commissioner holding that no industrial controversy existed at the Long Island City or Farmingdale facilities on or after June 16, 1980. The board affirmed the determination of the ALJ and this appeal ensued. The New York District argues that the ALJ failed to make "critical findings of fact" as to each issue litigated before him thereby making judicial review of his determination impossible. In *Matter of Romero (Ross)* (65 AD2d 909, 910) and *Matter of Stark (Ross)* (66 AD2d 942), this court held that the board is required to make those findings of fact which are necessary to allow for "intelligent judicial review" of its determination. In cases involving mixed questions of fact and law, the board must make both factual and legal findings and these findings must be sufficiently articulated to allow judicial review of both the legal and factual basis for the determination (see *Matter of Fisher [Levine]*, 36 NY2d 146, 150). At the hearing, the New York District urged two alternative theories to support its contention that claimants were subject under subdivision 1 of section 592 to a seven-week disqualification from receiving benefits beginning June 16, 1980, the day the Boston pickets arrived at the New York District plants. First, the New York District argued that claimants' refusal to cross the Local 380 picket line and resume work on June 16 was a result of organized activity by their union, Local 757, and that this activity amounted to a "sympathy strike" thus disqualifying claimants under the broad language of subdivision 1 of section 592. Second, it argued that even assuming that Local 757 was not involved in orchestrating the work stoppage, the picketing by Local 380 alone was enough to create an industrial controversy at the New York District locations. With respect to New York District's first argument, conflicting testimony was presented at the hearing as to whether claimants' refusal to cross the picket line was, in fact, a result of Local 757 activity. In his decision, however, the ALJ made no finding as to this factual issue. The ALJ simply determined: "the refusal of these claimants to cross [the Local 380] picket line in and of itself did not create an industrial controversy at the New York locations." Assuming that this determination was based upon a *factual* finding that Local 757 was not involved in the refusal of its members to cross the picket line, the finding could arguably be upheld as the record contains conflicting evidence. If, however, the determination was based upon a *legal* finding that, regardless of union involvement, claimants' refusal to cross the Local 380 picket line did not amount to a "strike, lockout or industrial controversy" under subdivision 1 of section 592 of the Labor Law, the determination should be reversed. However broadly the Legislature intended the term "industrial controversy" to be construed, any reasonable construction must include a work stoppage organized by claimants' union in order to assist a sister union (see *Matter of Sprague [Lubin]*, 4 AD2d 911, 912). Since it is impossible to determine from the decision of the ALJ, as affirmed by the board, whether the determination was based on a factual finding that there was no union activity or an impermissible legal finding that union activity is irrelevant, the matter must be remitted for further amplification. We next turn to New York District's argument that even assuming that there was no Local 757 involvement, the Local 380 picketing by itself created an industrial controversy at the New York District. In this regard, *Matter of Freeman (Catherwood-Bouley Co.)* (9 AD2d 1008, 1009) and *Matter of Sprague (Lubin) (supra)* read together teach us that whether picketing at the claimants' place of employment creates an industrial controversy at that location depends upon whether the claimant's employer is involved, whether directly or indirectly, in the dispute (see, also, *Matter of Bucklaew [Robertson Elec. Co. — Corsi]*, 277 App Div 805). Moreover, the claimant's employer will be considered to be a

party to the dispute if the purpose of the picketing is to force the employer to exert pressure on a third party to accede to union demands. In this case, the ALJ did not make any finding, as required by *Sprague* and *Freeman,* as to the purpose of the Local 380 picketing or as to the extent of claimants' employer's involvement in the Local 380-Boston District labor dispute. Accordingly, this matter must also be remitted so that the requisite findings as to the involvement of claimants' employer in the Local 380-Boston District labor dispute and as to the purpose of the Local 380 picketing can be made. Finally, we find that claimants did not waive their right to rely on the parties' stipulation and, accordingly, the question whether section 593 (subd 1, par [a]; subd 3) of the Labor Law disqualify claimants from receiving benefits is not properly before this court. Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.