■ In the Matter of the Claim of DAVID P. KILLIAN, Respondent. GENERAL MOTORS CORPORATION, DELCO CHASSIS DIVISION, Appellant; JOHN E. SWEENEY, as Commissioner of Labor, Respondent. [645 NYS2d 627] —Peters, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed January 17, 1995, which ruled that claimant was entitled to receive unemployment insurance benefits.

Claimant was enrolled as a full-time engineering student at Clarkson University which made available the "Semester in Industry" program. In connection therewith, he worked as an engineer's assistant for the Delco Chassis Division of General Motors Corporation (hereinafter Delco) during the spring and summer semesters of 1992 for compensation. While there, claimant was rotated through several areas to work alongside different engineers on varied projects and assignments. Designated as "cooperative education" between the university and various industry sponsors such as Delco, participation therein was noted on claimant's transcript. For the entire time that he worked with Delco, he remained enrolled full-time at Clarkson.

Upon claimant's prearranged termination from Delco for the purpose of continuing his course of study at Clarkson, he applied for unemployment benefits. Although the Department of Labor initially ruled him eligible, after a hearing before an Administrative Law Judge (hereinafter ALJ) claimant was found ineligible since the services he performed were found to be excluded from the definition of "employment" embodied in

Labor Law § 511 (17).* Upon appeal to the Unemployment Insurance Appeal Board, the ALJ's determination was reversed. Therein, the Board relied upon the optional participation of claimant in such program, the lack of credit received and the failure of the program at Delco to "combine[ ] academic instruction with work experience" (Labor Law § 511 [17]). We disagree.

By Clarkson taking an active role in seeking corporate sponsors like Delco, scheduling all interviews with qualified candidates, administering the program and, according to its brochure, "monitor[ing] the student's progress * * * during the work assignment", we find this program to "combine[ ] academic instruction with work experience" (Labor Law § 511 [17]). We note that all students participating in such program are in their third or fourth year of their four-year degree requirements and thus benefit by being exposed to the rigors of their chosen field while industry similarly benefits by its preview of those highly motivated to apply years of specialized classroom theory and technology to the marketplace.

We further disagree with the Board that the statutory language of Labor Law § 511 (17) requires that participation in cooperative education programs like the one offered at Delco be mandatory to the completion of such student's course curriculum and/or that credit be awarded. Instead, participating students must remain enrolled in a "full-time program taken for credit at * * * [a qualifying educational] institution, which combines academic instruction with work experience" (*ibid.*) while they pursue the cooperative education program. Since claimant was so enrolled when he sought to alternate his course study with participation in the Delco program, we reverse the Board's decision as inconsistent with not only the statutory terms of Labor Law § 511 (17), but also its legislative underpinnings (*see, Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Rankin v Shanker*, 23 NY2d 111; *Matter of Lintz*, 89 AD2d 1038).

---

* Labor Law § 511 (17) provided, prior to its amendment by the Laws of 1994 (ch 375, § 1), as follows: "Certain college students. The term 'employment' does not include service performed by an individual under the age of twenty-two who is enrolled at a nonprofit or public educational institution which normally maintains a regular faculty and curriculum and normally has a regularly organized body of students in attendance at the place where its educational activities are carried on as a student in a full-time program taken for credit at such institution, which combines academic instruction with work experience, if such service is an integral part of such program, and such institution has so certified to the employer, except that this subdivision shall not apply to service performed in a program established for or on behalf of an employer or group of employers."

Our holding ensures that industry remains willing to open its doors to forge the union between industry and education critically needed to fully prepare future leaders for the demands of a domestic and international marketplace. It is only through a liaison between higher education and industry can we ensure that the resources of both are used to their greatest potential.

Mikoll, J. P., and Crew III, J., concur.

Mercure, J. (dissenting). We respectfully dissent. We will at the outset note our agreement with the majority's implicit conclusion that the Unemployment Insurance Appeal Board's determination to award benefits in this case may have the effect of depriving future college students of the opportunity to participate in worthwhile industry cooperative programs. As such, we agree that the Board's decision reflects poor policy. However, unlike the majority, we accept the limited scope of our judicial review function and the general authority of an administrative agency to fix short-sighted policy when it is so inclined.

When, as in this case, the Board's ultimate conclusion is reached through the application of established facts against a statutory framework, involving "quasi-legislative considerations of policy relating to the intended scope of the statute, the question is one * * * [on which the Board] may bring to bear its own special competence in carrying out the supervisory authority conferred on it by the Legislature" (*Matter of Fisher [Levine]*, 36 NY2d 146, 150). Presenting a mixed question of fact and law, such a determination must be sustained if it has a rational basis (*see, supra; Matter of Franconeri [New York City Dept. of Personnel—Hudacs]*, 190 AD2d 970, 971; *Matter of Le Porte [New York City Dept. of Personnel—Hartnett]*, 142 AD2d 866, 867, *lv denied* 73 NY2d 705).

The relevant facts, as found by the Board and supported by substantial evidence in the record, establish that claimant, enrolled as a student in a four-year course of study at a university, worked for the employer for eight months during the spring and summer semesters of 1992 as part of an optional industry co-op program. Notably, claimant received no academic credit for his participation in the program, and he and the other students in the program required the same number of credits to graduate as other students who did not participate in the program. Although the university instituted the program and was responsible for bringing claimant in contact with the employer, claimant was supervised by the employer's engineering staff and the employer was solely responsible for

paying claimant's salary. The employer and the university agreed that claimant's work would last only eight months; at the conclusion claimant returned to school to resume his studies. The employer offered claimant no further work.

Based upon the foregoing findings, we perceive no basis for disturbing the Board's conclusion that claimant's employment did not fall within the exclusionary provision of Labor Law § 511 (17) relative to work performed by a full-time student in a program that combines academic instruction with work experience, where the service is an "integral part" of the program. To the contrary, the record provides ample support for the Board's conclusion that claimant participated in the program primarily to enhance his future employment opportunities and not for the purpose of facilitating his education, as well as its quasi-legislative determination that the program was not an "integral part" of claimant's college curriculum, as that term is employed in Labor Law § 511 (17). Unlike the majority, we discern no irrationality in the Board's apparent conclusion that, in order to constitute an integral part of a student's program, the work-experience component must either be mandatory or credit bearing.

Nor are we persuaded that the record lacks substantial evidence to support the finding that claimant did not voluntarily leave his employment. Whether a claimant has voluntarily left his or her employment is normally an issue of fact for the Board to resolve (*Matter of Horton [Hartnett]*, 176 AD2d 1103, 1104). An agreed-upon termination date does not necessarily mandate a finding that the claimant voluntarily left (*see, e.g., Matter of Kalichman [Ross]*, 81 AD2d 961; *Matter of Ziembiec [Ross]*, 62 AD2d 1105; *cf., Matter of Nester [Ross]*, 79 AD2d 808; *see also, Matter of Wade [General Motors Corp.—Hudacs]*, 204 AD2d 774, 775), and it is undisputed that the employer offered claimant no additional work on the termination date. Finally, the employer's assertion that claimant should be ruled ineligible for benefits because he was allegedly unavailable for work when he resumed attending college has not been preserved for review.

In view of the foregoing, we would affirm the Board's decision.

Yesawich Jr., J., concurs. Ordered that the decision is reversed, without costs, and claim dismissed.